THE STATE OF OHIO, APPELLEE, *v.* DANBY, APPELLANT.

(No. E-82-29—Decided
February 11, 1983.)

Mr. *Daniel Brady,* for appellee.
Mr. *James Burge,* for appellant.

HANDWORK, J. This case is before the court on appeal from a judgment of the Erie County Court of Common Pleas. A jury found defendant-appellant, Christopher Danby, guilty of the offense of aggravated drug trafficking, a violation of R.C. 2925.03(A)(6). The court thereafter sentenced appellant to a term of imprisonment on August 6, 1982. From said judgment, this appeal has been brought.

The pertinent facts, which were adduced in a hearing on appellant's motion to suppress, may be summarized as follows. On December 10, 1981, appellant drove a friend of his, Jack Bingley, to the Pick-N-Pay grocery store in Sandusky Plaza to purchase groceries. Appellant remained in his automobile while Bingley entered the store. Shortly thereafter, Bingley emerged from the store and reentered appellant's vehicle. A Pick-N-Pay security guard, Derek Hutchins, followed Bingley out of the store, believing that he had just stolen several items. As Hutchins approached the vehicle's passenger side, Hutchins and Bingley exchanged words, and Bingley reached for his wallet. Hutchins, thinking Bingley was reaching into the backseat for a gun, drew his weapon and fired, partially shattering the windshield and striking Bingley in the head.

Immediately after the shooting, several Sandusky police officers arrived. They immediately secured the area and began interviewing witnesses, one of whom was appellant. Patrolman Paseka questioned appellant and another witness in the patrolman's cruiser. Patrolman Paseka testified that appellant was not suspected of any crime, was not under arrest, and was free to leave at any point if he so desired. While appellant was being questioned, Sergeant Runner and Detective Weber secured appellant's vehicle. Sergeant Runner frisked Bingley for a weapon upon learning that Hutchins thought Bingley was armed and, finding none, he made a cursory visual search of the car's interior. Sergeant Runner found no weapon of any type. Detective Weber also conducted a cursory search of the car's interior. The record reveals that he looked into the backseat through the rear windows. He then opened the driver's door and, in his words, "glanced underneath to see as much as I could see without feeling underneath, and so forth." No weapon was found.

At this point, to facilitate the investigation of the shooting, Detective Weber ordered that appellant's car be impounded. A wrecker was called and the car was towed to the police garage. Bingley was taken to the hospital. Officer Paseka requested that appellant come to the police station for further questioning regarding the circumstances of the Bingley shooting, which he did.

At the police station, appellant was told by Detective Wolfe that his car was in the police garage and that the officers wished to search it. The record indicates that the ostensible objects of the search were the gun that Hutchins thought he had seen and the various items that Bingley had shoplifted. The record further indicates that appellant was given a written police form, referred to as a "Consent-to-Search" form. Appellant read this form and answered affirmative-

ly when Detective Wolfe asked if he understood it. The form also contained the *Miranda* warnings and questions for obtaining a waiver of these rights. Appellant signed the consent form in the presence of several officers. Detective Weber and Officer Hamilton witnessed appellant sign the form and they also signed it. The officers then proceeded to search appellant's vehicle. Their search uncovered no gun, but they did find several small plastic bottles containing ninety-four tablets. Subsequent chemical analysis revealed these tablets to be unit doses of lysergic acid diethylamide. Lysergic acid diethylamide ("L.S.D.") is a controlled hallucinogenic substance under Schedule I. (R.C. 3719.41[C][9].) Also found were several Vick's inhalers that Bingley had apparently shoplifted.

Appellant was later arrested and indicted for aggravated trafficking. On June 15, 1982, appellant filed a motion to suppress the contraband obtained during the search of his vehicle. Said motion was overruled by the trial court at the conclusion of the hearing. The contraband was admitted in evidence against appellant at his trial on the aggravated trafficking charge.

Appellant has timely brought this appeal in which he makes the following assignment of error:

"The trial court erred, and to the prejudice of appellant, in denying appellant's motion to suppress evidence obtained in a warrantless search of his automobile, and in admitting such evidence against appellant at trial, over objection."

Along with the foregoing assignment, appellant has framed the issue to be reviewed herein as follows:

"Is evidence seized by police officers in a warrantless search admissible at trial, under the consent exception, where the consent to search is obtained after the party to be searched is advised that a warrant would be obtained if his consent were withheld?"

In support of his assignment of error, appellant argues that when a warrantless search is based upon consent, the burden is upon the state to prove that the consent was freely and voluntarily given. He further argues that the evidence in the instant case reveals no more than an acquiescence to a claim of lawful authority. He contends that the state has not sustained its burden of proof on the issue of voluntariness, and thus any evidence seized during the search must be suppressed.

At the suppression hearing held on June 15, Detective Wolfe testified that he informed appellant of what police suspected, stating:

"This is when I told him [Bingley] was suspected of shoplifting in the store and also that the man that shot [Bingley] advised that he thought he was reaching for a gun, and this is what we were interested in finding in the car."

Detective Wolfe further testified to the circumstances under which appellant consented to the search of his car, stating in part:

"I explained that we were desirous of searching the vehicle and that he could sign a waiver for the search or we could get a search warrant drawn up."

On cross-examination, Detective Wolfe elaborated on his statements to appellant:

"I said there was two ways we could search his [appellant's] vehicle. * * * One, that he sign the waiver of search or the other was with a search warrant, and he was made aware of both ways we could have done it."

In *Schneckloth* v. *Bustamonte* (1973), 412 U.S. 218, the United States Supreme Court held at pages 248-249:

"* * * [W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion,

express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent."

See, also, *United States* v. *Goosbey* (C.A. 6, 1970), 419 F. 2d 818.

Accordingly, a warrantless search based upon the consent of the defendant is valid if his consent is voluntarily given. The burden of proving such consent is on the prosecution. *Schneckloth* v. *Bustamonte, supra*; *Bumper* v. *North Carolina* (1968), 391 U.S. 543, 548 [46 O.O.2d 382]. Furthermore, the degree of proof constitutionally required is proof by "clear and positive" evidence.[1] *United States* v. *Jones* (C.A. 6, 1981), 641 F. 2d 425, 429; *United States* v. *Scott* (C.A. 6, 1978), 578 F. 2d 1186, 1188-1189, certiorari denied, 439 U.S. 870; *United States* v. *McCaleb* (C.A. 6, 1977), 552 F. 2d 717, 721.[2]

In construing the phrase "clear and positive" in terms of evidentiary proof, we observe that several courts have held that it is quantitatively equivalent to proof by clear and convincing evidence. See, *e.g., People* v. *Reynolds* (1976), 55 Cal. App. 3d 357, 127 Cal. Rptr. 561; *State* v. *Sherrick* (1965), 98 Ariz. 46, 402 P. 2d 1, 6-7. We find that clear and positive proof differs in no significant respect from clear and convincing proof. In Ohio, clear and convincing proof has been defined as follows:

"* * * Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations [or issues] sought to be established. It is intermediate, *being more than a mere preponderance,* but not to the extent of such certainty as is required beyond a reasonable doubt * * *." (Emphasis added.) *Cross* v. *Ledford* (1954), 161 Ohio St. 469, 477 [53 O.O. 361].

When appellant was brought to the Sandusky police station, he was not suspected of any crime and was not in custody. Rather, he was a material witness to a matter then under investigation. The facts then known to Detective Wolfe and the other police officers could lead them to conclude, and reasonably so, that appellant's vehicle might contain a gun and, possibly, shoplifted goods. These beliefs were communicated to appellant and he was informed of his right to refuse to consent to any search. Of course, the knowledge of one's right to withhold consent is clearly *not* a constitutional prerequisite in Fourth Amendment cases to finding voluntary consent. *Schneckloth* v. *Bustamonte, supra,* at 234, 249. The knowledge of such a right is only one factor to be considered among others in determining voluntariness.

In *United States* v. *Boukater* (C.A. 5, 1969), 409 F. 2d 537, the defendant at first refused to sign a written form consenting to a search of his briefcase by secret service agents. One of the agents then suggested that a warrant could be

---

[1] This is in contrast to a case involving an involuntary confession issue. Once the admissibility of a confession is challenged, the prosecution has the burden of proving voluntariness by a *preponderance of the evidence.* *Lego* v. *Twomey* (1972), 404 U.S. 477, 489; cf. *State* v. *Melchior* (1978), 56 Ohio St. 2d 15, 25 [10 O.O.3d 8].

[2] In *United States* v. *Jones* (C.A. 6, 1981),

641 F. 2d 425, the Sixth Circuit Court of Appeals stated at page 429:

"* * * As a waiver of the rights provided in the Fourth Amendment, a valid consent must be free and voluntary[.] * * * The burden of proving a valid consent * * * [is] on the government, and as we have repeatedly held, this burden * * * [requires] *'clear and positive' proof* that the consent was uncontaminated by duress, coercion, or trickery." (Emphasis added.)

obtained. The defendant eventually stated that the agents could go ahead and search his briefcase. The United States Court of Appeals found the consent voluntary and upheld the search of the defendant's briefcase, but stated at page 538:

"The statement by [agent] Rivers about procuring a search warrant is more troublesome and might lead us to a different result *if the evidence indicated that Boukater was in custody* and that the agent either said or implied that he might as well consent because a warrant could be quickly obtained if he refused. * * * Since appellant had been advised that he was not under arrest and was free to leave, he would not have been coerced into consenting to an immediate search by the agent's statement that he would attempt to get a warrant. As we say, this factor is troublesome, but we have concluded that it does not taint the search *since everything else points towards completely voluntary consent.*" (Emphasis added.)[3]

Under certain circumstances not present here, a statement by police that if consent is not forthcoming a warrant will be obtained may well serve to vitiate the voluntariness of any subsequent consent. However, in viewing the totality of the circumstances as *Bustamonte* requires us to do, we conclude that Detective Wolfe's statement did not taint the voluntariness of appellant's consent.

In supplementing its holding in the *Bustamonte* decision, the Supreme Court stated at 233:

"* * *[I]f under all the circumstances it has appeared that the consent was not given voluntarily — that it was coerced by threats or force, or granted only in submission to a claim of lawful authority —

then we have found the consent invalid and the search unreasonable."

The record clearly reveals that no coercion, either through threats or physical violence, was ever employed against appellant, nor has he alleged that such was the case. The other possibility, that appellant acquiesced or assented "only in submission to a claim of lawful authority," is similarly not present. Detective Wolfe did not falsely claim possession of a search warrant,[4] but rather candidly informed appellant why the officers needed to conduct the search, either with his consent or with a search warrant. Appellant clearly understood that he had the constitutional right to withhold his consent. A further indication that appellant's consent was voluntary was the fact that he showed the officers the particular key required to unlock the car's glove compartment in which the stolen Vick's inhalers were found. In addition to the other indicia of voluntariness in the case *sub judice*, the testimony of six police officers was undisputed. Based upon all of the facts and circumstances, we conclude that appellant's consent was voluntarily given. Moreover, the record reflects *clear and convincing evidence* that appellant voluntarily consented to the search of his car. We therefore find that appellant's sole assignment of error is not well-taken.

On consideration whereof, the judgment of the Erie County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

CONNORS, P.J., and DOUGLAS, J., concur.

[3] See, also, *United States, ex rel. Gockley, v. Myers* (C.A. 3, 1967), 378 F. 2d 398; *Hamilton v. North Carolina* (D.N.C. 1966), 260 F. Supp. 632.

[4] See *Bumper v. North Carolina* (1968), 391 U.S. 543, 548-549 [46 O.O.2d 382]; *United States v. Jones* (C.A. 6, 1981), 641 F. 2d 425, 429.