OPINION
The State of Ohio is appealing, pursuant to Crim.R. 12(K), the decision of the trial court sustaining Seiber's motion to suppress all the evidence found, including statements made by Seiber, as a result of a search of Seiber's person by a Dayton police officer.
The facts of this matter and the reasoning of the trial court are set forth concisely but completely in the trial court's decision and entry as follows:
"This matter comes before the Court upon Defendant's Motion to Suppress filed on January 24, 2002. A hearing was held on February 15, 2002.
 "I. FINDINGS OF FACT
"Patrolman John Zimmerman was driving in his marked police cruiser around 2:00 a.m. on November 18, 2001, westbound on East Fifth Street. The officer saw the defendant bending over slightly and looking into cars as they were passing. The officer believed the defendant to be trying to get the attention of drivers and suspected the defendant was attempting to solicit. The officer turned around and came back eastbound down Fifth Street. When the defendant saw his cruiser she turned and walked away. The officer pulled up to the defendant, rolled down his window and asked the defendant what she was doing. She said she was heading to a friend's house on Jersey Street. The officer pointed out to the defendant that Jersey Street was in the other direction. The defendant then said to him that she was going to a house on Irwin which was also in the other direction. The officer exited his car and asked for identification and the defendant had none. He obtained her name and social security number and returned to his cruiser to run a check for warrants.
"As Officer Zimmerman returned to his car Officer Lori Mack arrived in a marked police cruiser and began talking with the defendant. Officer Zimmerman had, twice, asked the defendant to remove her hands from her pocket for officer safety. The defendant complied. Officer Mack finally asked the defendant if she had any weapons to which the defendant replied that she did not. Officer Mack asked if she could pat the defendant down and the defendant asked why. Officer Mack said it was a matter of officer safety and the defendant complied. Officer Mack felt something in her pocket and asked the defendant if she could reach into her pocket and the defendant again complied with the request. Defendant's pocket was found to contain a crack pipe. Upon interrogation, the defendant admitted that she had been smoking crack. The defendant was arrested and placed in Officer Mack's cruiser where more crack was later found which is believed to belong to the defendant.
"Officer Zimmerman testified that he graduated from the Dayton Police Academy in February, 2001, (as did Officer Mack) and that he had conducted approximately five arrests for prostitution. In the previous five arrests he had witnessed the suspects waving their arms or producing some other kind of dramatic motion, unlike what he observed in this case. Officer Zimmerman also testified that the area in which this event took place was a `high crime' area, and he testified that, at the time of the search, the Defendant was not free to leave.
 "I. FINDINGS OF LAW
"An officer's decision to conduct and [sic] investigatory detention of an individual need only be supported by reasonable, articulable suspicion is [sic] `vaguely defined as something more than an inchoate or unparticularized suspicion or `hunch,' but less than the level of suspicion required for probable cause.' State v. Osborne (Dec. 13, 1995), 1995 Ohio App. LEXIS 542, Mont. Co. App. No. CA 15151, unreported.
"In determining whether reasonable suspicion was present, we sacrifice certainty for flexibility and look to the `totality of the circumstances.' State v. Bobo (1988), 37 Ohio St.3d 177, 179,524 N.E.2d 489. State v. Wilks (Sept. 30, 1993), Mont. Co. App. No. 13654, unreported.
"Reliance on the characterization of certain areas as `high crime' or `high drug' in an effort to justify stopping and frisking citizens has been criticized on several quarters. One commentator argues that `location may in fact be a euphemism for race.' State v. Shepherd
(1997), 122 Ohio App.3d 358; 701 N.E.2d 778. The fact that an investigative detention occurred in a high crime area is not by itself sufficient to justify the stop. State v. Carter (1994), 69 Ohio St.3d 57,65, 630 N.E.2d 355, 362.
"In the instant case Officer Zimmerman testified that he conducted the field interview because he was in a high crime area and because the defendant was moving in such a way as to look inside passing cars. This Court cannot find those combined actions as sufficient to support reasonable suspicion of criminal activity, however, they do not prevent a consensual encounter. Once the defendant could not accurately or credibly explain where she was going, on a close call, the Court finds that Officer Zimmerman has articulated sufficient factors for reasonable suspicion which justifies a Terry stop.
"Once stopped, our attention must be drawn to the search. In State v.Danby 11 Ohio App.3d 38; 463 N.E.2d 47 (Erie, 6th Dist., 1983) the Court stated:
". . . a warrantless search based upon the consent of the defendant is valid if his consent is voluntarily given. The burden of proving such consent is on the prosecution. Schneckloth v. Bustamonte, supra; Bumperv. North Carolina (1968), 391 U.S. 543, 548 [46 O.O.2d 382]. Furthermore, the degree of proof constitutionally required is proof by `clear and positive' evidence. United State v. Jones (C.A. 6, 1981),641 F.2d 425, 429; United State v. Scott (C.A. 1978), 578 F.2d 1186-1189, certiorari denied, 439 U.S. 870; United States v. McCaleb (C.A. 1977),552 F.2d 717, 721.
"The Court further stated:
"In construing the phrase `clear and positive' in terms of evidentiary proof, we observe that several courts have held that it is quantitatively equivalent to proof by clear and convincing evidence. See, e.g. Peoplev. Reynolds (1976), 55 Cal.App.3d 357, 127 Cal.Rptr. 561; State v.Sherrick (1965), 98 Ariz. 46, 402 P.2d 1, 6-7. We find that clear and positive proof differs in no significant respect from clear and convincing proof. In Ohio, clear and convincing proof has been defined as follows:
"* * * Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations [or issues] sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt * * *." (Emphasis added). Cross v. Ledford (1954), 161 Ohio St. 469, 477
[53 O.O. 361].
"The Court must look to `all the circumstances' to determine if the defendant consented. Danby, supra.
"In the instant case, Officer Mack asked if she could search the defendant who was not, at the time, free to go. Further, the defendant did not consent to the search so much as she acquiesced when she was told that the search was necessary for officer safety. The defendant had not been advised that she was free to leave, her presence was secured by two officers, Miranda warnings were not yet given, she questioned why she should allow the search and she was given a reason that would lead her to believe she would be searched in any event.
"Furthermore, Officer Zimmerman testified that, at the time of the search, he had determined there was no longer a reason to hold the defendant but he had not yet advised her that she was free to go. He had run the computer check on the defendant and could not determine a reason to hold her, so his `reasonable suspicion' had now evaporated. Since `consent given during an investigatory detention is only valid if the police officer had reasonable suspicion to detain the person,' State v.Taylor (1995), 106 Ohio App.3d 741, 749, 667 N.E.2d 60, 65-66, citingFlorida v. Royer (1982), 460 U.S. 491, 502-503, 103 S.Ct. 1319,1326-1327, 75 L.Ed.2d 229, 239-240, there could be no valid reason to conduct a search of the defendant.
"Finally, it is alleged the search was made for officer safety. Officer Zimmerman did not express such a need. Each time he asked the defendant to remove her hands from her coat pockets, the defendant complied. Before Officer Mack began the search, Officer Zimmerman had determined that the defendant would be free to go. The concern of officer safety that resulted in the search came from Officer Mack alone, based on the fact that the defendant had to be told twice to remove her ungloved hands from her pockets on an early November morning and a general knowledge that prostitutes sometimes carry weapons for their own protection.
"A police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate grounds for doing so. In the case of the self protective search, for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. Sibron v. New York, 392 U.S. 40, 64 (1968).
"There was no testimony as to bulges in the defendant's pockets, as to Officer Mack's personal fear for her safety, or any indication that the defendant was armed and dangerous other than hunches which fall short of the required reasonable inference. Assuming Officer Zimmerman to be a reasonably prudent person, he did not seem to have the same fears as Officer Mack, he was prepared to let the defendant go. Thus, the Court finds the State has failed to meet their burden of proof by even a preponderance of the evidence.
"Wherefore, Defendant's Motion to Suppress is hereby SUSTAINED. All evidence is suppressed either as a result of the faulty search or as fruits of the poisonous tree."
The State brings to us the following sole assignment of error:
 "THE TRIAL COURT ERRED WHEN IT SUPPRESSED THE EVIDENCE IN THIS CASE BECAUSE THE OFFICERS CONDUCTED A LAWFUL PROTECTIVE SEARCH FOR WEAPONS THAT LED TO A VALID ARREST."
The first matter to resolve is whether the trial court was correct in holding that the first officer, Officer Zimmerman, had reasonable, articulable suspicion to justify the stop of Seiber. We have recognized that the Supreme Court of the United States has ruled "that as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." Ornelas v. United States (1996),517 U.S. 690, 699. However, we have also recognized that the Supreme Court went on to grant deference to inferences drawn by "resident judges and local law enforcement officers" from the facts found by the trial court. Id., 700. State v. Gipp (Dec. 31, 1998), Montgomery App. No. 17369; State v. Claiborne (May 31, 2002), Montgomery App. No. 19060. In this case, the somewhat eccentric behavior of Seiber walking alone in a high drug area at 2:00 a.m. and unable to present a valid reason to Officer Zimmerman why she was there and where she was going justified the officer's Terry stop of Seiber to institute an investigation. We affirm that part of the trial court's decision. In fact, we do not believe it is as close a call as the trial court found it.
The issue of the search does indeed present a close call. We find it noteworthy, as did the trial court, that Officer Zimmerman testified that after finding no reason to hold Seiber after his computer investigation, he was prepared to tell her that she was free to leave. Tr. 30-31. Thus, Officer Zimmerman, who had made the initial stop of Seiber, felt no further fear for his safety, which would have justified a search of Seiber.
It was only Officer Mack, the second officer on the scene, that testified she felt the need to conduct the search of Seiber for "officer's safety." Although not noted by the trial court, however, Officer Mack already was suspicious of Seiber since she knew who Seiber was, as Seiber was "in my book" a known offender. This fact emerges from the following testimony by Officer Mack during her direct examination by the prosecutor:
"Q. Now, how was it you recognized Ms. Seiber?
 "A. Uh . . . I have a — I have a list of known prostitutes and drug abusers and violent crime offenders. And what I've done is taken and obtained pictures of all of them in a big binder that I have.
 "And I — probably once a week, I flip through this binder so I recognize somebody's face if there's a Warrant for them. Since I'm new to the job, this way I'll have an idea of, you know, who the players are, who — who people we deal with on a daily basis are.
 "And she is in my book and she has been pointed out to me in the past by other officers.
 "Q. And this is for individuals that are on your beat? In your District?
"A. It's in the entire District, yes."
It is not unreasonable to surmise that Officer Mack already had in her mind to search Seiber even before she articulated this to the defendant. In any case, while we find this to be an extremely close call, we find the decision by the trial court regarding the search is supported by competent, credible evidence, and we hereby affirm it. We also point out that the deference granted the trial court in its findings of fact is important and should be adhered to, especially in cases where it is a very close call. In addition, "when we weigh the court's legal determinations, we will indulge all reasonable presumptions consistent with the record in favor of [the] lower court." State v. Coppock
(1995), 103 Ohio App.3d 405, 411, quoting Fletcher v. Fletcher (1994),68 Ohio St.3d 464, 468. As a final matter, no abuse of discretion will be found unless the record is "devoid of competent, credible evidence." Id.
The judgment is affirmed.
FAIN, J. and GRADY, J., concur.