OPINION
{¶ 1} The appellant, Darrell Elam, appeals the September 23, 2002 judgment of conviction and sentencing of the Common Pleas Court of Hancock County, Ohio.
 {¶ 2} The facts relevant to this appeal are as follows. On April 1, 2002, officers of the Findlay Police Department were checking the areas of several motels in Findlay for suspicious activity. While checking the parking lot of the Econo Lodge Motel, Officer Robert Francis noticed Elam's vehicle. Officer Francis, a six year veteran of the FPD's narcotics unit and a member of the METRICH Drug Task Force, knew Elam to be a crack cocaine dealer. The officers then decided to begin surveillance of the Econo Lodge parking lot. During their surveillance, Officer Francis recognized Dawn Oates, a known crack user, enter and leave room #119 at the motel. The officers then followed Oates and eventually stopped her motor vehicle. After speaking to her and her vehicle passenger, Lisa Waddle, the officers returned to the motel and knocked on the door of room #119.
 {¶ 3} Upon knocking, one of the room's occupants asked who was at the door. After identifying themselves as police officers and knocking again, the officers were allowed into the room by Elam, who acknowledged that the room belonged to him. The officers then noticed two other people in the room, Krista Corbin and Angie Rayle Bowling. The officers informed Elam of their suspicions that he was selling drugs and asked for permission to search the room, which he had indicated belonged to him. Officer Francis then read a consent to search form while showing it to Elam. Elam stated that he understood the document, had no questions, and then signed the consent to search form. The officers then proceeded to search the room. The search took approximately one and half hours. During the search, the officers discovered drug paraphernalia, thirty-nine packets of what appeared to be crack cocaine, and cash. As a result, Elam was placed under arrest.
 {¶ 4} The results of the search of room #119 lead to a one count indictment filed on April 9, 2002, against Elam for possession of cocaine in violation of R.C. 2925.11(A), a felony of the first degree. Pursuant to two motions to suppress filed by Elam regarding the search and subsequent statements made by Elam, the trial court held a suppression hearing on June 24, 2002. On August 13, 2002, the trial court overruled Elam's motion to suppress the evidence obtained during the search of his motel room but granted Elam's motion to suppress the incriminating statements he made without the benefit of Miranda warnings while in police custody. The matter proceeded to a two-day jury trial on August 19-20, 2002. The jury returned a guilty verdict as to the sole count in the indictment. Elam was then sentenced to a term of imprisonment for seven years on September 12, 2002, which was reflected in a written judgment entry filed on September 23, 2002. This appeal followed, and Elam now asserts three assignments of error.
 {¶ 5} The trial court erred in overruling Mr. Elam's Crim. R. 29 motion for acquittal.
 {¶ 6} The trial court erred in allowing the introduction of other alleged crimes and wrongs, in violation of Evid. R. 404(B).
 {¶ 7} The trial court erred in denying Mr. Elam's motion to suppress certain evidence obtained as a result of an involuntary consent to search.
 First Assignment of Error {¶ 8} Rule 29(A) of the Rules of Criminal Procedure states that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense[.]" Accordingly, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus; see, also, State v. Boddie, Allen App. No. 1-2000-72,2001-Ohio-2261, 2001 WL 1023107. However, as this Court has previously held, the Bridgeman standard "must be viewed in light of the sufficiency of evidence test[.]" State v. Foster (Sept. 17, 1997), 3rd Dist. No. 13-97-09, 1997 WL 576353, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In Jenks, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
 {¶ 9} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra.
 {¶ 10} Elam was charged and convicted of possession of crack cocaine in an amount equal or greater to 25 grams but less than 100 grams in violation of R.C. 2925.11(A). This section provides: "No person shall knowingly obtain, possess, or use a controlled substance." A required element of this offense is that the substance involved must be considered a "controlled substance" as defined in R.C. 3719. Elam maintains that the State failed to prove that he possessed a controlled substance, to wit: crack cocaine, as alleged in the indictment. Elam bases this assertion upon the fact that the witness who analyzed the thirty-nine packets and determined that they contained crack cocaine failed to do so to a "reasonable scientific certainty" and, therefore, failed to properly establish that the substance he analyzed was crack cocaine. We disagree.
 {¶ 11} Generally, "an expert opinion is competent only if it is held to a reasonable degree of scientific certainty. In this context, `reasonable certainty' means `probability.'" State v. Benner (1988),40 Ohio St.3d 301, 313, citing State v. Holt (1969), 17 Ohio St.2d 81, syllabus, abrogated on other grounds by Horton v. California (1990),496 U.S. 128. As Elam correctly notes, the Ohio Supreme Court has previously determined that in the interpretation of certain scientific facts by a qualified witness, the opinion he expresses must be based on "probability" or "actuality." Holt, 17 Ohio St.2d at 85, citing Shepherdv. Midland Mut. Life Ins. Co. (1949), 152 Ohio St. 6; see, also, Statev. D'Ambrosio (1993), 67 Ohio St.3d 185, 191; Benner, supra. Thus, inBenner, the Court held that a coroner's opinion that the cause of death was "more than likely" strangulation complied with the requirement that the expert's opinion be based on probabilities. Benner,40 Ohio St.3d at 314.
 {¶ 12} In the case sub judice, the State presented the expert testimony of Scott Dobransky, a forensic scientist with the Bureau of Criminal Investigation and Identification for over twenty years. After testifying as to his training and the various tests he employed in analyzing the forty packets[1] seized from the Econo Lodge motel, the following discussion was had:
 {¶ 13} "Q: Based upon your education, your training, your background as a forensic scientist, and your experience, do you have an opinion as to what the contents of State's Exhibit 6 [the forty packets] are?"
 {¶ 14} "A: Yes, all 39 packets — all 40 packets actually contain crack cocaine."
 {¶ 15} Dobransky further testified that the total weight of the forty packets equaled 25.67 grams. In addition to his conclusions about the identity and weight of the substance contained in the 40 packets, Dobransky testified that he conducted four different tests on the substance all in an effort to accurately determine its identity. Regarding three of these four tests, Dobransky testified that the substance in each packet tested positive for crack cocaine. Thus, he conducted a random sampling of the forty packets for the fourth test, each of which tested positive for crack cocaine. One of the reasons Dobransky provided for conducting this many tests was that by conducting such a "scientific process of analysis" the results "would be defendable by another — to [him], to another scientist, or to another chemist in how [he] did [his] test, the conclusion that [he] did reach."
 {¶ 16} In addition, Krista Corbin testified as to her extensive knowledge of crack cocaine, what it looks like, the typical quantities in which it is bought and sold, and the affect that crack has on her. She further testified that she drove Elam and Angie Bowling to Toledo in order for him to purchase crack on April 1, 2002. Corbin also testified that upon returning to Findlay with approximately an ounce and a half of crack, Elam began breaking it down into smaller amounts that he placed in baggies as she and Bowling smoked some of this crack. During her testimony, Corbin also identified a safe belonging to Elam, which she stated was where he placed some of the baggies on that night. Given her extensive knowledge of crack cocaine, Corbin's testimony regarding the nature of the substance recovered from the motel room, including the fact that she, herself, was smoking some of it and that she believed it to be crack, is further evidence that the substance contained in the packets tested by Dobransky was actually crack cocaine. See State v. Miles, 3rd Dist. No. 4-02-28, 2003-Ohio-1370. Therefore, the State presented sufficient evidence such that reasonable minds could reach different conclusions as to whether each material element of a crime was proven beyond a reasonable doubt, and the trial court did not err in overruling Elam's motion for acquittal. Accordingly, the first assignment of error is overruled.
 Second Assignment of Error {¶ 17} In his second assignment of error, Elam asserts that the trial court erred in admitting evidence of other crimes and wrongs committed by him. This Court's analysis of this issue begins by noting that "the decision of whether or not to admit evidence rests in the sound discretion of the [trial] court[.]" Wightman v. Consolidated Rail Corp.
(1999), 86 Ohio St.3d 431, 437, citing Peters v. Ohio State LotteryComm. (1992), 63 Ohio St.3d 296, 299; see, also, State v. Sage (1987),31 Ohio St.3d 173, 182. Thus, this Court will not disturb the trial court's decision unless it is unreasonable, arbitrary, or capricious. In addition, this abuse of discretion must have materially prejudiced the defendant. State v. Lowe (1994), 69 Ohio St.3d 527, 532, citing State v.Maurer (1984), 15 Ohio St.3d 239, 265.
 {¶ 18} The Rules of Evidence prohibit the use of "other crimes, wrongs, and acts * * * to prove the character of the accused in order to show that he acted in conformity therewith." Evid.R. 404(B). However, both the Rules of Evidence and Ohio statutory law provide exceptions to this rule. Evidence Rule 404(B) states that prior bad acts evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Furthermore, the Revised Code provides In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are * * * prior or subsequent thereto[.] R.C. 2945.59. However, "R.C. 2945.59 must be strictly construed against the state[,]" as it is an exception to the general rule of the prohibition of character evidence. State v. Burson (1974), 38 Ohio St.2d 157, 158 (citation omitted).
 {¶ 19} In order to admit evidence of prior bad acts, not only must such evidence tend to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[,]" there must also be "substantial proof that the alleged other acts were committed by the defendant." Lowe, 69 Ohio St.3d at 530, citing State v.Broom (1988), 40 Ohio St.3d 277, 282-283. In addition, there are "those situations where other acts `form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment,' and which are `inextricably related to the alleged criminal act.'" Lowe, 69 Ohio St.3d at 531, quoting State v. Curry (1975),43 Ohio St.2d 66, 73. Such evidence is admissible under Evid.R. 404(B).Lowe, supra.
 {¶ 20} Here, Elam maintains that the evidence that he purchased crack cocaine from a source in Toledo on April 1, 2002, that he subsequently sold crack to Dawn Oates and two others, and that he used a scale to weigh the crack in the motel room was all inadmissible pursuant to the Rules of Evidence. We disagree. This testimony went not only to the immediate background of the facts supporting the charge of possession of crack cocaine, but also tended to prove Elam's motive, opportunity, and intent in "knowingly" possessing crack cocaine as charged in the indictment. This evidence further tended to prove his preparation, plan, and knowledge regarding the offense with which he was charged. Thus, the trial court did not abuse its discretion in admitting this evidence, and the second assignment of error is overruled.
 Third Assignment of Error {¶ 21} In his third assignment of error, Elam maintains that the trial court erred in overruling his motion to suppress the evidence obtained as a result of the search of the Econo Lodge motel room. In support of this argument, Elam contends that the search was not consensual despite the fact that he signed the consent to search form because his consent was provided involuntarily. At issue is whether Elam was compelled to sign the consent to search form because he was told that he would not be permitted to leave the room until the police officers searched it.
 {¶ 22} When ruling on a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given the evidence presented. State v. Johnson (2000), 137 Ohio App.3d 847, 850. An appellate court may not reverse a trial court's ruling on a motion to suppress if it is supported by substantial and credible evidence. Id.
 {¶ 23} The well settled law under the Fourth and Fourteenth Amendments as interpreted by the United States Supreme Court is that a search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967), 389 U.S. 347,357; Coolidge v. New Hampshire (1971), 403 U.S. 443, 454-455; Chambersv. Maroney (1975), 399 U.S. 42, 51. One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. Davis v. United States
(1946), 328 U.S. 582, 593-594. However, "[t]o rely on the consent exception of the warrant requirement, the state must show by `clear and positive' evidence that the consent was `freely and voluntarily' given."State v. Posey (1988), 40 Ohio St.3d 420, 427, citing Bumper v. NorthCarolina (1968), 391 U.S. 543, 548, 88; State v. Danby (1983),11 Ohio App.3d 38, 41.
 {¶ 24} The Supreme Court has long held that the "touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno (1991),500 U.S. 248, 250. "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." Ohio v. Robinette
(1996), 519 U.S. 33, 39. The Court has further held that "[t]he Fourth Amendment test for a valid consent to search is that the consent be voluntary, and `[v]oluntariness is a question of fact to be determined from all the circumstances.'" Id. at 40, quoting Schneckloth v.Bustamonte (1973), 412 U.S. 218, 248-249. In addition, "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." Bustamonte, 412 U.S. at 227. Furthermore, it would "be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary." Robinette, 519 U.S. at 39-40. Thus, "if under all the circumstances it has appeared that the consent was not given voluntarily — that it was coerced by threats or force, or granted only in submission to a claim of lawful authority — then we [the Supreme Court] have found the consent invalid and the search unreasonable."Bustamonte, 412 U.S. at 233.
 {¶ 25} A few years after the Bustamonte decision, the Supreme Court had the opportunity to determine if the same standard applied to an accused in custody. See United States v. Watson (1976), 423 U.S. 411. InWatson, the defendant gave his consent to search his car while in policy custody. The Supreme Court held that "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." Id. at 424. Moreover, Watson followed the Bustamonte standard for determining the voluntariness of a search by finding the defendant's consent in Watson to be voluntary. In so doing, the Supreme Court stated that, based on the totality of the circumstances, the defendant's consent had been given freely and without his will being overborne. Id.
 {¶ 26} This Court has likewise held that situations that involve a defendant in police custody at the time he consented to a search of his property are not "per se" unreasonable. See State v. Dye (May 14, 1993), Crawford App. No. 3-92-47, 1993 WL 157728. In Dye, a search warrant was executed on the defendant's apartment. Upon entering the apartment, Dye was surrounded by ten to twelve ATF agents, several of whom had their guns drawn, he was handcuffed, and taken outside where the handcuffs were removed and he was asked to consent to a search of his unattached garage, which the warrant did not cover. Dye, supra. This Court found that Dye's consent was free from coercion or duress and voluntarily given based upon the totality of the circumstances, which included him being informed that he did not have to consent, that the agents would seek a search warrant for the garage if he refused to consent, and that the evidence obtained from the garage could be used against him. Id.
 {¶ 27} In the case sub judice, the circumstances surrounding the consent to search given by Elam were far less intimidating than those inDye. Only one of the three officers who were present in the motel room was in uniform, and although all three were armed, unlike the facts ofDye, none of the officers had their weapons drawn. Further, although Elam was told he could not leave the room until after the search, he was never handcuffed or otherwise physically restrained, unlike Dye, who was handcuffed and removed from his home. Elam was also shown the consent to search form as Officer Francis read it aloud. Included in this form was language informing Elam of his constitutional right not to have a search made of the premises without a search warrant. Officer Francis also informed Elam that he did not have to consent to the search. Thus, despite being told that he was not allowed to leave the room until the officers searched it, Elam was informed otherwise both by Officer Francis' own statements and by the language of the consent to search form, which he signed without asking any questions even when afforded the opportunity to ask questions by Officer Francis. In addition, like Dye, Elam did not give his consent at a police station, but rather, while in his own motel room. See Dye, supra. Moreover, Elam never testified that he felt coerced by threats or force by the officers into consenting to the search nor did he testify that his will was overborne in any way by the circumstances surrounding him.
 {¶ 28} The totality of the circumstances do not demonstrate that Elam's consent was not given voluntarily — that it was coerced by threats or force, or granted only in submission to a claim of lawful authority. In addition, Elam presented no evidence to the contrary. Therefore, the trial court did not err in allowing the evidence obtained as a result of the search to be introduced at trial. Accordingly, the third assignment of error is overruled.
 {¶ 29} For these reasons, the judgment of the Common Pleas Court of Hancock County, Ohio, is affirmed.
Judgment affirmed.
 BRYANT, P.J., and CUPP, J., concur.
[1] Although thirty-nine packets were originally recovered from the motel room, Dobransky, the expert who tested these packets, testified that he discovered an additional packet within one of the original thirty-nine, for a total of forty packets.