OPINION
{¶ 1} Plaintiff-appellant the State of Ohio appeals from the trial court's decision not to classify defendant-appellee Michael Lee Sloan as a sexual predator.
 {¶ 2} In June 2003, appellant moved-in with his girlfriend and her two young daughters. The girls were ages six and nine at the time. During the period that the appellant lived in the home, he allegedly sexually molested both children. The girls initially told their mother that appellant was touching them in December 2003.
 {¶ 3} In March 2004, the girls again reported the abuse to their mother. Both girls told her that the appellant had touched their breasts, buttocks and vagina area on top and underneath their clothing. The six-year old also indicated that on one occasion, the appellant had her fondle his penis with her assistance. Both girls indicated that the touching had occurred "many, many times." A ten year old also alleged that the appellant had fondled her buttocks and vagina area when she spent the night at the residence. At that point, the mother reported the abuse and Detective Jeff McBride of the Richland County Sheriff's office was assigned to investigate the allegations.
 {¶ 4} After an initial investigation into the accusations, the appellant was indicted on three counts of Gross Sexual Imposition in violation of R.C. 2907.05 (A) (4), felonies of the third degree. On October 19, 2004, the appellant entered into a plea agreement with the State of Ohio in which he agreed to plead no contest to two counts of Gross Sexual Imposition. In exchange for his plea, the State agreed to dismiss the third count of the indictment.
 {¶ 5} On December 16, 2004, the trial court made a finding of guilty on the appellant's no contest plea. The trial court sentenced appellee to three years in prison on each count to run consecutively for a total sentence of six years. The trial court suspended appellee's prison sentence, and ordered the appellee to spend six months in the Richland County Jail with a work-release privileges.
 {¶ 6} A hearing was held on January 31, 2005 to determine whether the appellee should be designated as sexual predator. At the hearing, the State called four witnesses: Counselor Victoria Glorioso, Mansfield Police Detective Jeff Shook, State Probation and Parole Officer Kim Marcelli, and Richland County Sheriff Detective Jeff McBride. The appellee testified in his own behalf.
 {¶ 7} Jeff Shook of the Mansfield Police Department testified that he investigated allegations of sexual misconduct against the appellee involving teenage girls in a church youth group. Detective Shook stated that during the course of his investigation he interviewed thirty different girls, and the appellee was eventually charged with five counts of Sexual Imposition and two counts of Importuning in the Mansfield Municipal Court. Those charges involved seven different victims between the ages of thirteen and sixteen. Detective Shook testified that the allegations that the appellee touched the girls on their inter thighs and buttocks were confirmed by corroborating witnesses. Concerning the two counts of importuning, Detective Shook stated that those charges arose from a statement given by a fourteen year old and a fifteen year old girl. Both girls indicated that appellee asked them if they wanted to have sexual intercourse with him. Because of the publicity surrounding the case, Detective Shook indicated that he was contacted by a 20 year old woman named Eva Goon who indicated she had also been sexually abused by the appellee. Ms. Goon gave a formal statement to Detective Shook in which she indicated that appellee had engaged in sexual intercourse with her starting when she was 14½ years old which was in 1995 or 1996. Further Ms. Goon indicated in her statement that the appellee had used alcohol to impair her.
 {¶ 8} Counselor Victor Glorioso, who evaluated the appellee, testified that the appellee placed the blame on the victims. He claimed that he touched the two young girls to teach them a lesson because they were hitting him in his private areas. Furthermore Ms. Glorioso testified that appellee exhibited stalking behavior in attempting to make contact with the victim's mother even after he had been told not to do so. Ms. Glorioso indicated that the appellee was a medium/high risk to re-offend because he did not accept responsibility for his sexually abusive behaviors, and did not admit any sexually deviant thoughts.
 {¶ 9} Probation Officer Kim Marcelli testified that the appellee displayed deceptive behavior during their interview. She indicated that the appellee did admit to touching the two young victims under their clothing and to having the nine year old victim fondle his penis. However appellee led Probation Officer Marcelli to believe that there was only one victim in his prior Municipal Court case.
 {¶ 10} During appellee's testimony, the State questioned him regarding his failure to disclose information to the counselor's about his Municipal Court case. Appellee indicated that Ms. Glorioso did not specifically ask him that question. He stated that if not specifically asked, he did not have any intention of telling her. When asked why he placed the youngest victim's hand on his penis, the following exchange took place:
 {¶ 11} A: "At the time, I was just showing her. You know what I'm saying? Because they kept continually kicking me in the groin."
 {¶ 12} Q: "You were showing her your penis?"
 {¶ 13} A: "No. no. I said, when you kick me here, this is right here, you know what I'm sayin? And it hurts me. They did that on —
 {¶ 14} Q: "So you felt it necessary to take a 6 year old's hand and place it on your penis so she knew what it would feel like, is that what you are telling the court?"
 {¶ 15} A: "No.
 {¶ 16} Q: "What is it that you are saying, Mr. Sloan? Because I don't understand how it is appropriate, for a man of your age to place a child's hand on your penis. So what is it that you were trying to accomplish?"
 {¶ 17} A: "I was trying to accomplish them not to continually kick me. I explained that to their mother and their grandmother."
 {¶ 18} Q: "And you thought by taking that child's hand and placing it on your penis that was going to teach them something?"
 {¶ 19} A: "To try and get them to grasp the understanding that it hurts."
 {¶ 20} Q: "And how is that going to teach her that it hurts?"
 {¶ 21} A: "I'm not for sure."
 {¶ 22} (T. 97-98).
 {¶ 23} The trial court also received a psychological evaluation from Dr. James J. Karpawich, Ph. D. of the District V-Forensic Diagnostic Center in Mansfield, Ohio.
 {¶ 24} At the conclusion of the testimony, the trial court indicated it would consider the testimony, exhibits and arguments of both sides in reaching its decision. On March 24, 2004, the trial court issued a judgment entry classifying the appellee as a sexually oriented offender. Appellant State of Ohio timely appeals the trial court's designation pursuant to R.C. 2950.09 (C)(2)(c)(iii) raising the following assignment of error:
 {¶ 25} "THE TRIAL COURT ERRED IN CLASSIFYING THE DEFENDANT AS A SEXUALLY ORIENTED OFFENDER, RATHER THAN AS A SEXUAL PREDATOR."
 I. {¶ 26} In appellant's sole Assignment of Error, the State asserts that the trial court's decision not to classify appellee as a sexual predator is against the manifest weight of the evidence. We agree.
 {¶ 27} Ohio's sex-offender registration scheme provides for three classes of sex offenders: habitual sex offenders, sexual predators, and sexually oriented offenders. See R.C. 2950.09; see, also, State v.Williams, 88 Ohio St.3d 513, 518, 2000-Ohio 428, 728 N.E.2d 342, certiorari denied sub nom. Suffecool v. Ohio (2000), 531 U.S. 902,121 S.Ct. 241, 148 L.Ed.2d 173.
 {¶ 28} In State v. Hayden (2002), 96 Ohio St.3d 211, 2002-Ohio-4169,773 N.E.2d 502 the Ohio Supreme Court noted: "R.C. 2950.01(B) defines a `habitual sex offender' as a person who `is convicted of or pleads guilty to a sexually oriented offense' and who `previously has been convicted of or pleaded guilty to one or more sexually oriented offenses.' R.C.2950.01(B) (1) and (2). In the case of an adult, R.C. 2950.01(E) defines a `sexual predator' as a person who `has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses.' Finally, the least restrictive designation that of a `sexually oriented offender,' is not specifically defined in R.C. Chapter 2950. However, we have explained that a `sexually oriented offender' is a person `who has committed a `sexually oriented offense' as that term is defined in R.C. 2950.01(D) but who does not fit the description of either habitual sex offender or sexual predator.' Cook, supra, 83 Ohio St.3d at 407, 700 N.E.2d 570;Williams, supra, 88 Ohio St.3d at 519, 728 N.E.2d 342". Id. at 213, 2002-Ohio-4169 at ¶ 9, 773 N.E.2d at 504. This is the classification in which the trial court placed appellee. The question is whether the trial court's decision is against the manifest weight of the evidence.
 {¶ 29} In State v. Cook (1998), 83 Ohio St.3d 404, the Ohio Supreme Court determined that R.C. Chapter 2950 is remedial in nature and not punitive. Traditionally, the courts, including this one, have applied the standard set forth by the Ohio Supreme Court in C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. InC.E. Morris the Ohio Supreme Court announced the standard for reviewing civil judgments as against the weight of the evidence. The court held that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. at paragraph one of the syllabus. The civil standard has been applied to the trial court's determination that a particular offender is a sexual predator. See, e.g., State v. Tillery, Cuyahoga App. No. 79166, 2002-Ohio-1587; State v. Childs (2001), 142 Ohio App.3d 389, 395,755 N.E.2d 958; State v. Wilkerson (2000), 138 Ohio App.3d 861,742 N.E.2d 716; State v. Gerhardt, Clark App. No. 00CA0090, 2001-Ohio-1470;State v. Scott, Logan App. No. 8-2000-26, 2001-Ohio-2107; State v. Hood,
Washington App. No. 00CA51, 2001-Ohio-2620; State v. Cooper, Muskingum App. No. CT2001-0013, 2001-Ohio-1676; State v. Parsons (Aug. 17, 2001), Huron App. No. H-00-042. Thus "if there is competent, credible evidence to support the factual findings of the trial court, we review only whether, after weighing the evidence and resolving evidentiary conflicts and issues of credibility, the trial court properly applied the governing law to those factual findings". State v. Griggs, 12th Dist. No. CA2001-08-194, 2002-Ohio-4375 at ¶ 5. In Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." In the case at bar, we find that the trial court did not properly apply the law to the factual findings.
 {¶ 30} A "sexual predator" is defined as a "person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E); State v. Eppinger (2001), 91 Ohio St.3d 158,163, 2001-Ohio-247, 743 N.E.2d 881, 886. There must be clear and convincing evidence that the offender is a "sexual predator" before that predator classification may be applied. R.C. 2950.09(B) (4). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. While clear and convincing evidence is "more than a mere preponderance" of the evidence, it is less than that which constitutes "beyond a reasonable doubt." State v. Danby (1983),11 Ohio App.3d 38, 41, 463 N.E.2d 47, citing Cross,161 Ohio St. at 477, 120 N.E.2d 118.
 {¶ 31} In State v. Hayden (2002), 96 Ohio St.3d 211, 2002-Ohio-4169,773 N.E.2d 502, the Ohio Supreme Court held; "the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and of Section16, Article I of the Ohio Constitution do not require a trial court to conduct a hearing to determine whether a defendant is a sexually oriented offender. Instead, according to R.C. Chapter 2950, if a defendant has been convicted of a sexually oriented offense as defined in R.C. 2950.01(D) and is neither a habitual sex offender nor a sexual predator, the sexually oriented offender designation attaches as a matter of law. Id. at 215, 2002-Ohio-4169 at ¶ 15, 773 N.E.2d at 506. In the case at bar, appellee was convicted of Gross Sexual Imposition which is a sexually oriented offense. R.C. 2950.01(D) (1) (a). Accordingly, the only issue before the trial court was whether the appellee is likely to engage in the future in one or more sexually oriented offenses.
 {¶ 32} In making the sexual predator determination, the trial court is to examine the factors enumerated in R.C. 2950.09(B) (2), which include the following:
 {¶ 33} "(a) The offender's age;
 {¶ 34} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 35} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 36} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 37} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offenses or to prevent the victim from resisting;
 {¶ 38} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense, and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 39} "(g) Any mental illness or mental disability of the offender;
 {¶ 40} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 41} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 42} "(j) Any additional behavioral characteristics that contribute to the offender's conduct." R.C. 2950.09(B) (2).
 {¶ 43} In State v. Eppinger, supra, the Ohio Supreme court set forth the requirements for conducting a sexual predator hearing. Of relevance to the case at bar, the Court noted "[f]inally, the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism. See State v. Thompson, supra. See, also, State v. Russell
(Apr. 8, 1999), Cuyahoga App. No. 73237, unreported, 1999 WL 195657;State v. Casper (June 10, 1999), Cuyahoga App. Nos. 73061, 73064, 73062 and 73063, unreported, 1999 WL 380437". Id. at 166, 743 N.E.2d at 889.
 {¶ 44} In the case at bar, the trial court found that "there was some evidence of grooming by the defendant and some evidence of a pattern of behavior of abuse of children." (Judgment Entry filed March 24, 2005 at 2). [R.C. 2950.09(B) (2) (h)]. However, the trial court did not consider that appellant is forty-seven years old. (T. at 12). [R.C. 2950.09(B) (2) (a)]. The trial court did not consider that the victims in the case at bar were six and nine years old. (T. at 60). [R.C. 2950.09(B) (2) (c)]. The trial court did not mention that, the sexually oriented offenses for which sentence is to be imposed involved multiple victims. [R.C. 2950.09(B) (2) (d)]. In 2001, appellant was charged with five counts of sexual imposition and two counts of sexual importuning concerning teenage girls between the ages of thirteen and sixteen. (T. at 27; 79-80).The appellant was referred to a diversion program and the cases were dismissed. However, appellant admitted that he never completed any treatment program. (T. at 81-82; 90; 94). [R.C. 2950.09(B) (2) (f)]. The trial court did not consider this factor.
 {¶ 45} In the psychological report prepared for the court by Dr. James J. Karpawich, appellee denied that he had put his hand inside the clothes of any of the victims. (Defendant's Exhibit B at 5). He further denied any sexual interest in the children. (Id.). Appellee stated that he plead guilty "because he did not want to force the children to testify in court. He said he did not want them to be on the witness stand and be `drilled' in front of a jury." (Id.). However, appellee told his probation officer during their interview "that the one victim he had rubbed under her panties, rubbed her butt, and rubbed her chest. He admitted to having the nine year old victim touch his penis by placing her hand on his penis and holding it there and moving her hand up and down for approximately two and a half minutes. He stated it happened in the bedroom. He stated he did not ejaculate in front of the children, that he went into the bathroom to do that." (T. at 43). At the hearing appellee, when confronted with the inconsistency between what he had told Dr. Karpawich and what he had told his probation officer, stated "I don't recall saying that to [my probation officer]." (Id. at 88). Appellee contended that he admitted to the crimes because the probation officer was threatening to take away his work release unless he "told her what she wanted to hear." (Id. at 86). The trial court responded: "You indicated that [the probation officer] lunged at you viciously and wouldn't release you until you — she told — you told her what she wanted to know. Isn't it exactly correct that you wouldn't tell her the truth until she said she was going to do a polygraph?
 {¶ 46} "[Appellee]: I think she started out I just — I can't —
 {¶ 47} "[The Court]: Don't quibble with me. I don't want any bullshit. I want to hear. Isn't it true that you didn't tell her anything until she said she was going to have a polygraph?
 {¶ 48} "[Appellee]: Yes, sir. I believe she started that way, yes sir.
 {¶ 49} "[The Court]: No. She didn't start that way at all.
 {¶ 50} "[Appellee]: Okay.
 {¶ 51} "[The Court]: I know better than that.
 {¶ 52} "[Appellee]: Okay.
 {¶ 53} "[The Court]: You denied everything until she said, we're going to have a polygraph, not for prosecuting purposes, but for treatment purposes. That's when you decide they're going to find out anyway, and that's when you made some admissions.
 {¶ 54} "[Appellee]: Yes, sir". (Id. at 100-101).
 {¶ 55} Dr. Karpawich did not testify, nor did he have the benefit of appellee's admissions to the probation officer.
 {¶ 56} The record further contains evidence that appellee was charged with sexually oriented crimes against teenage girls prior to the case at bar. Appellee's counsel did not object to the admission of this evidence. In any event, the Rules of Evidence do not strictly apply to sexual predator determination hearings. State v. Cook, 83 Ohio St.3d 404,425, 1998-Ohio-291, 700 N.E.2d 570. In Cook, the Supreme Court of Ohio held that a court may rely on reliable hearsay, such as a presentence investigation report, when making its sexual predator determination. Id.
Further, evidence of uncharged sexual assaults is admissible at a sexual predator hearing. See State v. McElfresh (July 14, 2000), Washington App. No. 99CA36 (recognizing that the existence of other victims of sexual abuse is relevant when determining whether an offender should be classified as a sexual predator). See, also, State v. Jones, Belmont App. No. 02 BE 36, 2003-Ohio-1219, at ¶ 24; State v. Burgess (July 10, 2000), Fayette App. No. CA99-08-021.
 {¶ 57} Even without evidence of other sexually oriented offenses a court may still classify an individual as a sexual predator. In State v.Eppinger (2001), 91 Ohio St.3d 158, 2001-Ohio-247, 743 N.E.2d 881, the Court noted; "under certain circumstances, it is possible that one sexually oriented conviction alone can support sexual predator adjudication." Id. at 162, 743 N.E.2d at 881. The Court cautioned, however, "[b]ut a person who has been convicted of or who has pled guilty to committing one sexually oriented offense is not necessarily likely to engage in the future in one or more sexually oriented offenses. One sexually oriented offense is not a clear predictor of whether that person is likely to engage in the future in one or more sexually oriented offenses, particularly if the offender is not a pedophile. Thus, we recognize that one sexually oriented conviction, without more, may not predict future behavior." (Id).
 {¶ 58} However, "substantial evidence exists which indicates that child sex offenders are generally serial offenders. Specifically, in considering the Jacob Wetterling Crimes Against Children Registration Act, Section 14701, Title 42, U.S. Code, the House Report prepared for the Act stated: `Evidence suggests that child sex offenders are generally serial offenders. Indeed one recent study concluded the `behavior is highly repetitive, to the point of compulsion,' and found that 74 percent of imprisoned child sex offenders had one or more prior sexual offenses against a child.' See H.R. Rep. No. 392, 103rd Congress (1993).
 {¶ 59} Furthermore, in State v. Eppinger, supra, the Supreme Court stated: "Although Ohio's version, R.C. Chapter 2950, does not differentiate between crimes against children and crimes against adults, recidivism among pedophile offenders is highest. Some studies have estimated the rate of recidivism as being as high as fifty-two percent for rapists and seventy-two percent for child molesters." Comparet-Cassani, A Primer on the Civil Trial of a Sexually Violent Predator (2000), 37 San Diego L.Rev. 1057, 1071, citing Prentky, Recidivism Rates Among Child Molesters and Rapists: A Methodological Analysis (1997), 21 Law Human Behavior 635, 651.
 {¶ 60} "Furthermore, the United States Supreme Court, in McKune v.Lile (2002), 536 U.S. 24, 32-33, 122 S.Ct. 2017, 153 L.Ed.2d 47, stated `the victims of sex assault are most often juveniles,' and `[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault.
 {¶ 61} "In accordance, we can only conclude that the lower court was free to give due deference to the statistical likelihood of appellant's reoffending . . . Although the Ohio Supreme Court in Eppinger, supra, did not establish a bright-line rule that courts can rely solely on statistical evidence in making a sexual predator determination, it nevertheless endorsed the lower court's ability to give due weight to a statistical likelihood that sexual offenders of children are likely to reoffend when conducting its sexual predator determination.
 {¶ 62} "Further, in drafting R.C. Chapter 2950, the legislature recognized the existing statistical evidence, which overwhelmingly indicates that recidivism among pedophile offenders is highest. As stated in State v. Ellison, supra, the General Assembly passed the sexual predator laws in part because sexual predators `pose a high risk of engaging in further offenses even after being released from imprisonment.' Moreover, the United States Supreme Court has recognized that, statistically, convicted sex offenders who reenter society are much more likely than any other type of offender to be rearrested for a new rape or sex assault. McKune, supra." State v. Purser (2003), 153 Ohio App.3d 144,151-52, 2003-Ohio-3345 at ¶ 39-40, 791 N.E.2d 1053, 1058-59.
 {¶ 63} The record does not contain competent, credible evidence to support the trial court's finding that "defendant remains a treatable person". The evaluation prepared by Dr. Karpawitch states "[appellee] does not appear to be an appropriate candidate for outpatient sex offender treatment at this time because he denied he is a sex offender or that his activities had a sexual goal". (Defendant's Exhibit B at 6).
 {¶ 64} Based upon the record before us, we feel that we are duty-bound to exercise the limited prerogative of reversing a judgment as being against the manifest weight of the evidence. A careful review of the record reveals that the trial court's findings are not corroborated by competent and credible evidence. Further, we find that the evidence presented to the trial court at the hearing supports the finding that — appellee is a sexual predator and is likely to engage in the future in one or more sexually oriented offenses. The State fulfilled its burden of presenting clear and convincing evidence that the offender is a sexual predator. Accordingly, "[t]he court is to make this determination upon the state's presentation of clear and convincing evidence. R.C. 2950.09(B) (3) and 2950.09(C) (2)". State v. Williams, supra, 88 Ohio St.3d at 362,728 N.E.2d at 533-34.
 {¶ 65} Appellant's First Assignment of Error is sustained.
 {¶ 66} The Judgment of the Court of Common Pleas, Richland County is reversed. The case is remanded and the court is instructed to enter a finding that appellee is a sexual predator, to take the appropriate steps to notify appellee and the reporting agencies, and for further proceedings consistent with this opinion and the law.
Gwin, J., Boggins, P.J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The Judgment of the Court of Common Pleas, Richland County is reversed. The case is remanded and the court is instructed to enter a finding that appellee is a sexual predator, to take the appropriate steps to notify appellee and the reporting agencies, and for further proceedings consistent with this opinion and the law. Costs to appellee.