OPINION
{¶ 1} Appellant, Charles Brentlinger ("Brentlinger"), appeals the January 6, 2004 judgment of conviction in the Common Pleas Court of Seneca County.
 {¶ 2} The relevant facts of the case are as follows. On October 8, 2003, Robert McKinney ("McKinney") returned to his residence from picking up a pizza and heard a noise in the kitchen. McKinney proceeded to investigate the noise and noticed a male intruder in his residence. McKinney confronted the intruder and asked what he was doing. The intruder replied that he was waiting for McKinney's son, who did not live in the home. McKinney asked the intruder for the name of his son, but the intruder did not answer him. The intruder shined a flashlight in McKinney's face and McKinney grabbed the intruder and pulled him out the front door. McKinney stated the intruder went towards the backyard of the residence of Marvin and Rose Ludwig. McKinney then called the Seneca County Sheriff's Office. McKinney reported several rolls of Statehood coins missing from his collections.
 {¶ 3} Sergeant Herrig of the Seneca County Sheriff's Office arrived at McKinney's residence and searched the residence for any intruders. Sgt. Herrig inspected the residence for evidence and found that the door leading to the kitchen from the garage had been forced open, as had the outside rear door leading into the garage. Sgt. Herrig found a large screwdriver and a pry bar on a roll top desk in McKinney's home. McKinney declared that the items did not belong to him and he had never seen them in his residence before.
 {¶ 4} McKinney soon thereafter went to the residence of Marvin and Rose Ludwig to borrow materials to repair his door. When he looked into a window of the Ludwig residence McKinney saw the man that was the intruder in his home. McKinney asked Rose who the man was and she responded that the man was her brother. McKinney reported his observation to Sgt. Herrig, who went to the Ludwig residence and spoke with Rose. Sgt. Herrig asked Brentlinger to step outside of the residence, which Brentlinger did. Rose invited Sgt. Herrig into the residence to look around. Meanwhile, Brentlinger remained outside the residence with Deputy Macklin. Rose showed Sgt. Herrig the room in which Brentlinger stayed and Sgt. Herrig observed a dark jacket and baseball cap on the bed in the room. Sgt. Herrig and Rose then went to the kitchen of the residence where the consent to search form was signed by Marvin.
 {¶ 5} During the search of the residence, Rose took a glass container in the shape of a rooster from the closet in the room where Brentlinger stayed. Inside the container were quarters, many of which were Statehood quarters. The quarters were taken by Sgt. Herrig. Sgt. Herrig also removed the jacket and cap that were on Brentlinger's bed. A Green Springs commemorative coin was also found in Brentlinger's possession. Brentlinger was placed under arrest and transported to jail.
 {¶ 6} On October 22, 2003, Brentlinger was indicted on one count of burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree, and one count of possessing criminal tools in violation of R.C. 2923.24(A), a felony of the fifth degree. Brentlinger filed a motion to exclude evidence of prior acts, a motion to suppress evidence based on an unconstitutional search, a motion in limine and supplement to his pending motion to exclude prior acts, and a motion to view witness' statements prior to trial. The state filed responses to the motions and the trial court denied Brentlinger's motion to view witness' statements prior to trial without a hearing.
 {¶ 7} A hearing on the other motions was held on December 29, 2003. At the hearing, Brentlinger and his counsel became aware of additional evidence and exhibits that had not been provided to them by the state. Brentlinger's counsel made an oral motion to exclude the evidence and, later, a motion dismiss to the case claiming the prosecution failed to follow Crim.R. 16 by not providing an updated evidence list and violating the discovery rule in other ways. The trial court denied the motion to dismiss and gave the prosecution twenty-four hours to provide Brentlinger with up-to-date information required to be provided under Crim.R. 16, including a complete list of Brentlinger's prior convictions. In its judgment entries dated December 31, 2003, the trial court denied Brentlinger's motion to suppress evidence and granted Brentlinger's motion to exclude evidence of prior acts with regard to the convictions earlier than 1983, but denied the motion with respect to the 1983 and 1993 convictions.
 {¶ 8} A jury trial began on January 5, 2004. On January 6, 2004, the jury found Brentlinger guilty of burglary and not guilty of possessing criminal tools. On the same day, the trial court sentenced Brentlinger to five years imprisonment and ordered Brentlinger to pay restitution in the amount of $762.00 to Washington Mutual Insurance Company and $756.63 to Robert McKinney. This sentence is reflected in the court's January 7, 2004 judgment entry of sentence. It is from this judgment that Brentlinger now appeals, asserting the following three assignments of error.
The trial court erred in denying the defendant's motion todismiss the case against the defendant due to the egregiousmisuse of Criminal Rule 16 by the state.
 The trial court erred in denying the defendant's motion tosuppress evidence:
 (A) Contrary to case law, the trial court held that defendant,who was renting a room from his sister, did not have to consentto a search and seizure of his room.
 (B) Contrary to testimony presented at the suppressionhearing, the trial court held that there was consent to searchthe home and seize evidence where the defendant resided eventhough the signed consent form was signed hours after the searchwas conducted.
 (C) Contracy (sic) to case law, the trial court held thatsearching a person for weapons for reasons of safety would permitthe law enforcement officials to seize items other than weapons.
 Trial court erred in denying defendant's motion for mistrialwhen the prosecution unnecessarily pointed out that the defendanthad been incarcerated since October 8, 2003 after defense counseland the court had gone to great lengths to keep that informationfrom the jury.
 {¶ 9} In the first assignment of error, Brentlinger argues that the trial court erred in not dismissing the case against Brentlinger due to the state's noncompliance with Crim.R. 16. Brentlinger argues that he was not informed of evidence which the state intended to use against him until the motions hearing, which was held one week prior to the scheduled trial date.
 {¶ 10} Crim.R. 16(A) provides that "[u]pon written request each party shall forthwith provide the discovery herein allowed." Pursuant to Crim.R. 16(B)(1)(b), "[u]pon motion of the defendant the court shall order the prosecuting attorney to furnish defendant a copy of defendant's prior criminal record, which is available to or within the possession, custody or control of the state." Further, Crim.R. 16(B)(1)(c) provides that "[u]pon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph * * * papers, documents, photographs, * * * or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant." Each party has a continuing duty to disclose materials that are discovered by "promptly mak[ing] such matter available for discovery or inspection, or notify[ing] the other party or his attorney or the court of the existence of the additional matter * * *." Crim.R. 16(D).
 {¶ 11} At the December 29, 2003 motions hearing, Brentlinger's counsel became aware of a 1993 conviction of Brentlinger for breaking and entering that was not previously disclosed by the state. The court brought to the prosecutor's attention that although the answer to discovery provided by the state provided "furnished to defendant and attached hereto is a copy of defendant's known prior criminal record available to the State of Ohio" there was not a copy of the criminal record provided to defendant or filed with the court. December 29, 2003 Transcript of Motions Hearing, p. 9. While the prosecution argued that Brentlinger's attorney had been provided a copy of Brentlinger's criminal record, that copy was not up-to-date and did not list the 1993 conviction for breaking and entering. Brentlinger's counsel moved the court to preclude the state from admitting the evidence at trial. Counsel also brought to the court's attention that the prosecution had provided him with a copy of the consent to search form signed by Marvin Ludwig just prior to commencement of the hearing, which counsel asserted also violated Crim.R. 16. Rather than precluding the state from introducing the evidence at trial, the trial court instead gave the prosecution twenty-four hours in which to provide discovery that fully and completely complied with Crim.R. 16.
 {¶ 12} Subsequent to the trial court's initial ruling that the prosecution would be given twenty-four hours to provide discovery, the testimony of Sgt. Herrig revealed to Brentlinger's counsel that there was additional evidence recovered from the Ludwig's residence that was not listed on the evidence sheet provided to counsel. The prosecution asserted that such information had only been given to them that morning by Sgt. Herrig. At this point, counsel for Brentlinger moved to dismiss the case based upon the prosecution's misuse of Crim.R. 16. This motion was denied by the trial court.
 {¶ 13} Crim.R. 16(E)(3) provides:
If at any time during the course of the proceedings it isbrought to the attention of the court that a party has failed tocomply with this rule or with an order issued pursuant to thisrule, the court may order such party to permit the discovery orinspection, grant a continuance, or prohibit the party fromintroducing in evidence the material not disclosed, or it maymake such other order as it deems just under the circumstances.
 {¶ 14} The rule leaves to the discretion of the court how to address noncompliance with the rule. Under the circumstances of this case, the trial court ordered the prosecution to provide discovery within twenty-four hours. The Ohio Supreme Court, inState v. Parson (1983), 6 Ohio St.3d 442, syllabus,453 N.E.2d 689, held that the trial court does not abuse its discretion by allowing evidence to be admitted even though the prosecution failed to comply with Crim.R. 16 if the record does not demonstrate: "(1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the [evidence] would have benefited the accused in preparation of his defense, or (3) that the accused was prejudiced by admission of the statement." While Parson dealt with the prosecution's failure to disclose an oral statement of appellant's co-defendant, the analysis used by the court is instructive to measure the significance of prosecutorial violations of the discovery rule. State v. Moore (1988), 40 Ohio St.3d 63, 66,531 N.E.2d 691.
 {¶ 15} In the case sub judice, the record does not show that Brentlinger made a timely motion for discovery pursuant to Crim.R. 16. However, the prosecution provided partial discovery to Brentlinger, as the state has an obligation to disclose exculpatory evidence to a defendant even if a request for discovery is not made. State v. Staten, (1984),14 Ohio App.3d 78, 470 N.E.2d 249. The trial court did not find that the prosecution acted willfully in failing to disclose the evidence at issue. The trial court also made it clear to the parties that if Brentlinger sought a continuance it would be granted by the court. Further, this was not a case where evidence was introduced by the prosecution at trial without the defendant having knowledge of the evidence beforehand The evidence not included with the discovery materials provided by the state was ordered to be provided to Brentlinger before the trial date. Since Brentlinger was made aware of such evidence a week prior to the commencement of trial we fail to see how he was prejudiced as a result of the trial court's decision to allow the prosecution twenty-four hours to furnish copies of the evidence. We conclude that the trial court did not err in deciding not to exclude the evidence or dismiss the case. Accordingly, Brentlinger's first assignment of error is overruled.
 {¶ 16} In his second assignment of error, Brentlinger argues that the trial court erred in denying Brentlinger's motion to suppress certain evidence and allowing the evidence to be admitted at trial. Brentlinger asserts three different errors with regard to the trial court's denial of the motion to suppress. The first error Brentlinger addresses involves the capacity of Rose and Marvin Ludwig to give consent for a search of Brentlinger's room.
 {¶ 17} We begin by noting that in a hearing on a motion to suppress evidence, the trial court assumes the role of a trier of fact and is in the best position to determine questions of fact and evaluate the credibility of witnesses. State v. Smith, 3d Dist. No. 13-02-16, 2002-Ohio-5745, at ¶ 10, citing State v.Dunlap, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988. Accordingly, a reviewing court must defer to the trial court's findings of fact if they are supported by competent, credible evidence. Id. A reviewing court then independently determines, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case.Smith, 2002-Ohio-5745, at ¶ 10, citing State v. Curry (1994),95 Ohio App.3d 93, 96, 641 N.E.2d 1172.
 {¶ 18} The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures by the government. In Katz v. United States (1967),389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576, the Supreme Court held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." An entry or search conducted with the consent of one who has common authority over the premises is a well-established exception to the warrant requirement. Schneckloth v. Bustamonte (1973), 412 U.S. 218,93 S.Ct. 2041, 36 L.Ed.2d 854. Consent to enter a residence can be given by anyone who possesses common authority over the premises, and in particular, by the resident of a home. See United Statesv. Matlock (1974), 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242;State v. Greer (1988), 39 Ohio St.3d 236, 530 N.E.2d 382. The Supreme Court in United States v. Matlock determined that "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." Matlock, 415 U.S. at 171.
 {¶ 19} A warrantless search based upon consent is valid if the consent is given voluntarily. State v. Danby (1983),11 Ohio App.3d 38, 41, 463 N.E.2d 47. The burden of proving such consent is on the prosecution. Id., citing Schneckloth,412 U.S. at 243. The degree of proof required is proof by "clear and positive" evidence. Danby, 11 Ohio App.3d at 41.
 {¶ 20} In Smith, this court determined that a roommate "possesses common authority over an area to be searched when she can demonstrate joint access or control over the area." Smith,
2002-Ohio-5745, at ¶ 18. The Smith court cited the Sixth Circuit Court of Appeals case of United States v. Reeves
(1979), 594 F.2d 536, in which the court permitted a search of a defendant's bedroom based upon the consent of a roommate even where the roommate did not share the defendant's bedroom. In bothReeves and Smith, the consent to search was given by an occupant who had joint control to the area being searched and the doorway to the bedroom was unobstructed.
 {¶ 21} In the case sub judice, the trial court found that the Ludwigs had authority to give consent to a search of the residence, including the room in which Brentlinger stayed. Rose Ludwig invited Sgt. Herrig into the residence initially and Marvin Ludwig signed the consent to search form. Rose and Marvin Ludwig were the owners of the home. Brentlinger is the brother of Rose Ludwig and had been staying with the Ludwigs for a couple of months. Brentlinger did not have a rental agreement with the Ludwigs. According to Rose's testimony, Brentlinger "earned his keep" by doing things around the house and giving the Ludwigs cash on occasion, but there is no record of any amounts paid or expected to be paid on a regular basis. Brentlinger stayed in an area of the house that was directly in front of the Ludwigs' bedroom. The room in which Brentlinger stayed had two doorways, one which led into the rest of the house and one that led into the Ludwig's bedroom. The only manner of ingress to and egress from the Ludwigs' bedroom was through the room in which Brentlinger stayed. The door to the room in which Brentlinger stayed was not locked and there was no special key to the room. Furthermore, Rose kept a computer that she owned in the closet of the room. Rose testified that the bi-fold doors of the closet stay open. Rose stated that she and others in the residence used the computer located in that closet.
 {¶ 22} The finding of the trial court that Brentlinger had no reasonable expectation of privacy in the room in which he stayed is supported by competent, credible evidence in the record. This case is similar to the facts in the Smith case in which this court held that joint access or control over an area gives the residents common authority. Therefore, we find no error with the trial court's determination that the Ludwigs had the authority to give consent for the search of the area in which Brentlinger stayed.
 {¶ 23} The second error Brentlinger addresses involves the sequence of events regarding the search of the residence. Brentlinger asserts that the consent to search form was signed hours after the actual search was conducted. Brentlinger argues that law enforcement officers searched the residence before they had the consent of the owner. The trial court found that the testimony at the hearing on the motion to suppress showed that the officers had consent to search before gathering evidence from the residence. The testimony showed that Rose invited Sgt. Herrig into the home to look around. Once Sgt. Herrig saw the area in which Brentlinger stayed he returned to the kitchen of the residence with Rose and obtained Marvin's signature on the consent to search form. It was not until he obtained consent that Sgt. Herrig seized items from the residence.
 {¶ 24} Rose testified that the time on the consent to search form was incorrect. While the form indicated that the search of the residence was conducted at 12:45 a.m. on October 9, 2003, Rose testified that she did not recall the search being that late. Rose's testimony varied regarding the sequence of events on the night of the incident. Rose only signed the consent to search form as a witness and not as the party granting the consent. The testimony of the law enforcement officers differed from the testimony of Rose with regard to when the consent to search from was signed. The court, being in the best position to determine the credibility of the witnesses and weigh the evidence, found that the officers received consent before removing evidence from the residence.
 {¶ 25} The finding of the trial court that law enforcement officers had consent to search the residence and seize items from within is supported by competent, credible evidence in the record. Therefore, we find no error with the trial court's determination that the evidence was properly seized and admissible at trial.
 {¶ 26} The third error Brentlinger addresses involves Deputy Macklin's request that Brentlinger empty his pockets and hand over a coin to him. Brentlinger argues that the search of his pockets was done without a warrant and following an unlawful detention that exceeded the scope of a reasonable stop underTerry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889. Pursuant to Terry, when law enforcement officers have an articulable suspicion that a suspect has committed or is committing a crime, officers may conduct an investigatory stop of the suspect and search the suspect to ensure their safety. Id.
 {¶ 27} Deputy Macklin testified that he was dispatched to the McKinney residence on October 8, 2003. Macklin's assistance was requested by Sgt. Herrig. Sgt Herrig requested that Macklin stand outside the Ludwig residence with Brentlinger while the other officers spoke with the Ludwigs inside the residence. Macklin testified that Brentlinger kept putting his hands in his pockets and Macklin requested two or three times that Brentlinger keep his hands out of his pockets. Finally, Macklin testified that for the purpose of his safety he asked Brentlinger to empty his pockets so Macklin could see what was in them. As Brentlinger emptied his pockets Macklin noticed that he pulled out a gold coin that looked similar to some of the coins he had seen in McKinney's home. Macklin testified that he asked Brentlinger if he could look at the coin and Brentlinger handed the coin to Macklin. After the coin was identified as one missing from McKinney's residence, the coin was taken as evidence by Sgt. Herrig. Brentlinger was arrested after the coin was confiscated.
 {¶ 28} Brentlinger asserts that Deputy Macklin violated his constitutional rights by asking Brentlinger to empty his pockets for safety reasons and then requesting to see the coin held in Brentlinger's hand Brentlinger argues that once Deputy Macklin discovered that Brentlinger did not have a weapon, he should have stopped rather than continuing the investigation by asking Brentlinger about the coin. We disagree.
 {¶ 29} Sgt. Herrig initially requested that Brentlinger step outside of the Ludwig residence. Brentlinger voluntarily complied with the request. Brentlinger was not under arrest at this time and his movement was not restricted. Deputy Macklin would have been justified in conducting a pat-down search of Brentlinger for weapons if he had a reason to believe Brentlinger was armed. SeeTerry, 392 U.S. 1. Deputy Macklin testified that Brentlinger repeatedly placed his hands in his pockets after Deputy Macklin requested that he keep his hands out of his pockets. Brentlinger complied with this request. Further, Brentlinger complied with Deputy Macklin's request to hand over the coin for Deputy Macklin to observe. Brentlinger did not have to comply with the request. Any information or evidence given by Brentlinger at this time was given at the request of officers and not in response to an order by law enforcement officers. Therefore, Brentlinger's compliance was voluntary and Deputy Macklin's requests did not violate Brentlinger's constitutional rights. We find no error with the trial court's determination that Brentlinger voluntary relinquished the coin to Deputy Macklin. Accordingly, Brentlinger's second assignment of error is overruled.
 {¶ 30} In his third assignment of error, Brentlinger argues that the trial court erred by not granting his motion for mistrial. Brentlinger argues that the prosecution brought to the jury's attention that he had been incarcerated since October 8, 2003 after the trial court determined that this information should be kept from the jury. Brentlinger asserts that this action by the prosecution prejudicially affected his rights and warranted an order of mistrial by the trial court.
 {¶ 31} The following interaction occurred at trial during the prosecution's questioning of Rose.
Q: Since the arrest how often have you gone out to see yourbrother at the jail?
 A: Approximately, once a week.
 Q: So, you do care about him?
 A: Yes.
 Mr. Bennett: Your Honor, may we approach?
* * *
Mr. Bennett: Your Honor, I didn't wanna do this. I wanted todo this as under the wire as possible so as not to overly taintthe jury, but I must strenuously object. The prosecutor justasked if this witness if she's visited the defendant at thejail.
 The Court: I can't believe that.
 Mr. Townsend: Your Honor, my only and —
 The Court: You can't do that.
 Mr. Townsend: The only reason —
 Mr. Bennett: And I move for mistrial.
 Mr. Townsend: The only reason I asked this was for bias.
 The Court: I understand but you can't —
 Mr. Townsend: Is it truly unfavorably prejudicial for them toknow that he might be at the jail? I mean, they can know he's incustody except for the fact that they've got a deputy hereguarding him.
 The Court: Did — Did I say we had a deputy here guarding him?Or, did I say we had court security?
 Mr. Townsend: Understood. You did make that distinction.
 Mr. Bennett: The State has been put on notice how sensitivethis issue was to me by the fact that we filed a Motion toTransport in street clothes, and that we don't have him inshackles.
 With the Prosecutor's display to inquire about jail, we havethe Prosecutor telling this jury that not only is my guy in jail,but his sister has gone out to the jail to visit him once a week;not only once a week but once a week since October the 8th.
 Mr. Townsend: How can that be prejudicial?
 Mr. Bennett: We cannot allow you to assume this trier of fact,this jury has not been biased. I move for mistrial.
* * *
Mr. Bennett: All I wanna make sure of if your objection issustained there will be no more conversations about the defendantbeing in jail or arrested. We already know he's indicted. That'sall they need to know.
 The Court: There will be no other conversations about himbeing in jail, anything about security, anything about transportofficers, nothing about in street clothes. Nothing more andthat'll be the order of the court.
 Now, the court will take under advisement and, we'll take afew minutes to see if there should be a mistrial here, or if wecan cure this situation.
January 5, 2003 Transcript, p. 211-213.
 {¶ 32} The trial court denied Brentlinger's motion for mistrial finding that the questioning by the prosecution was not proper but that a curative instruction would protect Brentlinger's rights. However, Brentlinger's counsel asked that a curative instruction not be given to the jury. Counsel believed that the harm caused by the instruction would outweigh the benefit. The trial court found that Brentlinger waived the curative instruction and stated that no further instruction regarding the issue would be given. Brentlinger now contends that the prosecution's question prejudicially affected the outcome of the case despite his request that a curative instruction not be given to the jury.
 {¶ 33} Brentlinger cites Tingue v. State (1914),90 Ohio St. 368, 108 N.E. 222, to support his argument that a mistrial was warranted in this case. The Ohio Supreme Court in Tingue
held that "[a] mistrial should not be ordered in a cause simply because some error has intervened." Id. at syllabus. For an order of mistrial to be proper, "[t]he error must prejudicially affect the merits of the case and the substantial rights of one or both of the parties * * *." Id. In further support of his argument, Brentlinger cites State v. Clark (1991), 74 Ohio App.3d 151,598 N.E.2d 740, in which the First District Court of Appeals held that the prosecution's improper comment on the defendant's refusal to testify constituted prejudicial error. The circumstances in the case sub judice are distinguishable from a situation in which the prosecution comments on a defendant's constitutional right not to testify. The case sub judice deals with a question by the prosecution that brought the fact that the defendant had been in jail to the attention of the jury. However, this was not the only time during the trial that the jury was made aware of the fact that Brentlinger had been taken to jail. The prosecution presented several witnesses whose testimony relayed the circumstances regarding Brentlinger being transported to the jail. Such testimony was not objected to by Brentlinger's counsel. It was not kept from the jury that Brentlinger was arrested after the coin from his pocket was identified by McKinney. Further, the question by the prosecution regarding how often Rose had been to the jail to visit her brother did not relay to the jury that Brentlinger was still being held in jail.
 {¶ 34} Taking into consideration the circumstances of the case, we cannot say that the question prejudiced the outcome of Brentlinger's trial. Furthermore, Brentlinger's counsel chose a trial tactic of requesting that a curative instruction not be given by the court. We hold that the trial court did not err in not granting Brentlinger's motion for mistrial. Accordingly, Brentlinger's third assignment of error is overruled.
 {¶ 35} Having found no merit with Brentlinger's assignments of error, the judgment of the Common Pleas Court of Seneca County is affirmed.
Judgment affirmed.
Shaw, P.J., and Rogers, J., Concur.