[Cite as *State v. Coogan*, 2019-Ohio-3016.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

      Plaintiff-Appellee,                      :

                               No. 18AP-829
v.                                               :        (C.P.C. No. 13CR-3015)

Joseph Coogan,                                   :       (REGULAR CALENDAR)

      Defendant-Appellant.                     :

---

D E C I S I O N

Rendered on July 25, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *Yeura R. Venters*, Public Defender, and *Marley C. Nelson*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Joseph Coogan, appeals the order of the Franklin County Court of Common Pleas, denying appellant's amended petition to vacate and set aside judgment. For the following reasons, we affirm the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This is the second appeal this court has heard in connection with appellant's 2014 conviction for rape, sexual battery, and kidnapping. In *State v. Coogan*, 10th Dist. No. 14AP-220, 2014-Ohio-4775, ¶ 3-11 ("*Coogan I*"), we set forth the facts of the case as follows:

> This case arises from an incident that occurred in the early morning hours of May 27, 2013 after a party in which both the victim ("KC") and appellant were drinking. The party occurred

at a residence where Cierra Chapman, KC and KC's daughter were living. In the early morning hours, KC became very intoxicated and then angry when talking about KC's mother. The other party guests told her to go to bed and appellant carried KC upstairs to her bedroom, with SC, the 16-year-old brother of Cierra Chapman, showing the way. Appellant is the biological father of KC who was 19 at the time.

At trial, KC testified that once appellant had taken her to her room, he laid her down on the bed and then he lay next to her. She does not remember SC showing appellant where the bedroom was, nor does she remember having a cigarette with SC. She testified that appellant lay down on the bed with her fully clothed. She said that he removed her pants, bra, and underwear and climbed on top of her. He touched her breasts and inserted his fingers into her vagina. He told her to be quiet and stop moving, while he held a blanket over her mouth. KC testified that appellant had his clothes on but his pants were pulled down.

KC said that when Cierra Chapman came into the room appellant immediately stood up and zipped up his pants, told Cierra to watch KC and left the room. KC then told Cierra what had happened. KC testified that she was menstruating at the time and was wearing a tampon, which appellant took out of her. An ambulance and the police were called and KC was taken to a hospital.

Cierra Chapman testified that both KC and appellant were drinking and appellant carried KC up to her room after she became emotional at the end of the evening, with her brother SC showing the way. Cierra said that after about 45 minutes to an hour, she went upstairs to the bedroom which she shared with KC.

When Cierra walked into the bedroom, appellant jumped up from lying on the bed and quickly covered KC with a blanket. Appellant's pants and belt were unbuckled. He put on his boots and fixed his belt. He asked Cierra to watch KC because she was going to be sick and then Cierra showed him out of the bedroom with the light from her phone.

Once appellant left, Cierra turned on the light and KC sat up and said "I think my dad touched me." (Tr. Vol. I, 111.) Cierra uncovered the blanket and saw KC's pants and underwear were down around her ankles. Her strapless bra was around her knees. She also had her shirt pulled up exposing her breasts.

Cierra described KC as hysterical. KC would cry, pass out, then wake up and scream leave me alone. Cierra was able to get her mother, who was also at the party, to come to the bedroom. KC told Cierra's mother what happened and they called the police.

SC, the 16-year-old brother of Cierra Chapman, said that he had not been drinking at the party. He testified that both appellant and KC lay down on the bed with their clothes on when he initially showed them KC's bedroom. SC testified that he went back to the bedroom after about 15 minutes to check on KC. He found both appellant and KC under a blanket. SC said that KC sat up and asked for a cigarette. All three of them smoked a cigarette and talked for a bit. Then SC left the bedroom.

The State presented DNA evidence at trial which was collected from KC's underwear, bra and used tampon. The expert, [Mr. Ross,] testified that the bra and tampon string both had some male DNA present. There was also male DNA found on vaginal and anal swabs from KC but not enough sample was present to make a more extensive comparison. On KC's underwear, the State's expert testified there was a significant amount of male DNA. The expert stated the frequency of the DNA profile for the DNA found on the underwear was one in every 3,333 unrelated male individuals and the appellant fit that profile.

Appellant testified in his own defense and stated that after SC left the room for a second time both he and KC fell asleep on the bed. Appellant said that KC woke up and asked that he close the door, so he got up to close the door and realized that it was already closed. It was at this point he said KC starting taking her clothes off. Appellant said he told her to stop because he was still in the room. He testified he physically grabbed her arms and her pants to prevent her from taking her clothes off, at which point he put the blanket over her and she fell back asleep. Appellant testified he was trying to adjust his belt to leave when Cierra Chapman came in.

*Coogan I* at ¶ 3-11.

{¶ 3}  In affirming appellant's conviction, in *Coogan I*, we found the judgment of conviction was not contrary to the manifest weight of the evidence and that defense counsel's closing argument was not deficient as to deny appellant effective assistance of counsel.  Regarding the manifest weight of the evidence, we discussed that issues of witness credibility, weight of the evidence, and inconsistencies fall within the province of the jury,

and concluded that, after having examined the entire record, competent and credible evidence supported the guilty verdict beyond a reasonable doubt. We noted Cierra's undisputed testimony that she saw appellant buckling his pants when she entered the room, Cierra's testimony that appellant hastily covered KC with the blanket, the fact that Cierra found KC in a state of undress under the blanket, and the male DNA on the tampon from KC. We observed that "the jury could well have doubted appellant's testimony that his DNA came to be found on KC's cloths and tampon only because he was trying to keep KC dressed when she attempted to remove her own cloths." *Coogan I* at ¶ 15.

{¶ 4} On October 8, 2014, appellant filed a petition to vacate and set aside judgment pursuant to R.C. 2953.21 and amended the petition on November 12, 2014. The petition sets forth the following five grounds for relief:

> GROUND I: Joseph Coogan's convictions and sentences are void and/or voidable because the State failed to disclose to trial counsel the underlying lab notes and data, which provided critical information necessary to impeach the State's experts. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963); *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). U.S. Const. Amends. VI, XIV; Ohio Const. Sections 1 & 10, Art. I. Exhibits B, E, F, and G.

> GROUND II: Joseph Coogan's convictions and sentences are void and/or voidable because the State provided false or misleading information to the jury or created a false impression and failed to correct the record. The State permitted the evidence presented to the jury to indicate that the Y-STR profile, from which Mr. Coogan could not be excluded, came from the crotch area of the victim's underwear when the DNA swab which produced those results could have been from the waistband of the underwear and consistent with Mr. Coogan's testimony. *Napue v. Illinois*, 360 U.S. 264, 272, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Giglio v. United States*, 405 U.S. 150, 151, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). U.S. Const. Amends. VI, XIV; Ohio Const. Sections 1 & 10, Art. I. Exhibits B, E, F, and G.

> GROUND III: Joseph Coogan's convictions and sentences are void and/or voidable because he was denied the effective assistance of counsel to which he was entitled under the Sixth and Fourteenth Amendments. Mr. Coogan's counsel failed to specifically request the underlying lab notes and data from the DNA testing done by the State. *Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Richey v. Mitchell*, 395 F.3d 660 (6th Cir. 2005); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980). U.S. Const., Amends. VI, XIV; Ohio Const. Art. I,§§ 1,10. Exhibits B, E, F, and G.

GROUND IV: Joseph Coogan's convictions and sentences are void and/or voidable because he was denied the effective assistance of counsel to which he was entitled under the Sixth and Fourteenth Amendments. Mr. Coogan's counsel failed to ask of a witness that he called to the stand vital impeachment information. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Richey v. Mitchell*, 395 F.3d 660 (6th Cir. 2005); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980). U.S. Const., Amends. VI, XIV; Ohio Const. Art. I,§§ 1,10. Exhibits A, B, C, D, E, F, and G.

GROUND V: Joseph Coogan's convictions and sentences are void and/or voidable because he was denied the effective assistance of counsel to which he was entitled under the Sixth and Fourteenth Amendments. Mr. Coogan's counsel failed to investigate or speak to Jordan Rapp and Ariana Harry. These witnesses were made known to him by Mr. Coogan, and could have provided crucial impeachment information. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Richey v. Mitchell*, 395 F.3d 660 (6th Cir. 2005); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980). U.S. Const., Amends. VI, XIV; Ohio Const. Art. I,§§ 1,10. Exhibits A, B, C, D, E, F, G, and I.

(Nov. 12, 2014 Am. Petition at 18-28.) Plaintiff-appellee, State of Ohio, filed an answer and a motion to dismiss the petition.

{¶ 5} On September 26, 2018, the trial court rendered judgment in appellee's favor on the amended petition. The trial court grouped appellant's grounds into three categories: (1) the state committed a *Brady v. Maryland*, 373 U.S. 83 (1963) violation by suppressing allegedly exculpatory evidence; (2) the state committed a *Napue v. Illinois*, 360 U.S. 264 (1959) violation by allegedly providing false or misleading information to the jury; and (3) ineffective assistance of counsel.

{¶ 6} The trial court found each ground for relief to be "barred by res judicata and/or lacks merit." (Sept. 26, 2018 Jgmt. Entry at 9-11.) Regarding the proposed *Brady* violation, the trial court found res judicata applied because "even assuming the State failed to produce certain lab reports, the defense did not raise any issue about the lab reports and DNA evidence before, during, or even in the direct appeal following the trial and sentence." (Jgmt. Entry at 9.) As an alternative on the merits, the trial court found that "even if the Court were to ignore res judicata, this argument nevertheless fails because the record does not support a finding that a *Brady* violation occurred as the State's final DNA report was disclosed to the defense prior to trial and State's BCI experts testified about the collection of the DNA swabs and results at trial and were subject to cross examination. *See generally*, *State v. Payne*, 10th Dist. No. 09AP-107, 2010-Ohio-1018, ¶ 32." (Jgmt. Entry at 9-10.)

{¶ 7} Regarding the proposed *Napue* violation, the trial court found res judicata applied because issues about the alleged false or misleading testimony of Ross was not raised at trial or in the direct appeal of this case. Regardless of res judicata, the trial court found appellant would not be entitled to relief on the merits since Ross' testimony did not need to be corrected by the state. The trial court noted:

> Mr. Ross testified that K.C.'s underwear was swabbed multiple times using one swab and that one of the areas swabbed included the crotch area of K.C.'s underwear. There was also testimony about why one swab was used as opposed to multiple swabs. Notwithstanding Mr. Ross' testimony, at trial the defendant offered an explanation as to how his DNA could have gotten on or inside K.C.'s underwear. Accordingly, even if Mr. Ross' testimony could have been misconstrued by the jury, the defendant's testimony about how his DNA could be found on or in K.C.'s underwear refutes this *Napue* violation claim.

(Jgmt. Entry at 10.)

{¶ 8} Regarding the allegations of ineffective assistance of counsel, the trial court found appellant's arguments that counsel failed to request labs notes and hire a DNA expert as well as failed to ask witnesses vital questions to be barred by res judicata and lacked merit. The trial court additionally found appellant's argument that ineffective assistance was rendered because counsel failed to call "crucial" witnesses to the stand to lack merit. (Jgmt. Entry at 11.) The trial court concluded appellant failed to demonstrate prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), and, as a result, was not entitled to

postconviction relief in this regard. Thus, the trial court denied appellant's amended petition to vacate the judgment of conviction and dismissed the petition.

{¶ 9} Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 10} Appellant assigns the following as trial court error:

[1.] The trial court erred when it denied Joseph Coogan's petition for postconviction relief on res judicata grounds when the petition set forth sufficient operative facts to establish that the State committed a *Brady* violation when it did not disclose the BCI LAB Notes that underlie the State's DNA final report, which could not have been raised on direct appeal because the necessary evidence was *dehors* the record.

[2.] The trial court erred when it denied Joseph Coogan's petition for postconviction relief on res judicata grounds when the petition set forth sufficient operative facts to establish the State committed a *Napue* violation when it did not correct the misleading testimony it adduced from David Ross, which could not have been raised on direct appeal because the necessary evidence was *dehors* the record.

## III. LEGAL ANALYSIS

{¶ 11} For clarity of analysis, we will address appellant's assignments of error together. Appellant's first and second assignments of error assert the trial court erred in denying, "on res judicata grounds," his petition for postconviction relief regarding alleged *Brady* and *Napue* violations. (Appellant's Brief at v, vi.) Appellant requests an evidentiary hearing on his postconviction petition "to develop a record upon which this issue may be more effectively addressed." (Appellant's Brief at 13, 21-22.)

{¶ 12} Appellee argues that appellant did not raise any error challenging the trial court's alternative conclusion, that defendant's first and second grounds for relief "lack[ed] merit," and notes that appellant did not raise any error asserting trial counsel was ineffective. (Jgmt. Entry at 9-11.) Regardless, appellee contends res judicata does apply since the DNA test results were provided to defense counsel, and the state had an expert testify regarding the DNA tests and the notes the analysts prepared. Thus, appellant could have raised an issue challenging the discovery he received or an argument challenging the collection of the DNA before or during the trial. Because appellant's petition was based on information and evidence that was available for use at the time of his trial, his failure to

raise these contentions before or during trial (and then on direct appeal) barred their review in these collateral proceedings. Appellee further asserts appellant did not attach sufficient evidence to his petition to warrant a hearing, and that the trial court was correct in finding appellant's *Brady* and *Napue* claims to lack merit on this record.

{¶ 13} Replying to appellee, appellant acknowledges his assignments of error challenge res judicata only, but suggests this court should "sua sponte" reach the arguments on the merits of the *Brady* and *Napue* claims in the interest of justice since we have the complete record of the case before us and the parties addressed the merits in their briefs, negating surprise and prejudice. (Appellant's Reply Brief at 4.)

{¶ 14} For the following reasons, we agree with appellee that appellant's failure to assign the trial court's merit rulings as error is dispositive to this appeal. First, App.R. 12(A)(1)(b) states that "a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs." In other words, this court will not review arguments which do not support reversal based on the assignment of error. *Huntington Natl. Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21 ("This court rules on assignments of error, not mere arguments."). Relatedly, an appellate court has no duty to create an argument on an appellant's behalf. *McKahan v. CSX Transp., Inc.*, 10th Dist. No. 09AP-376, 2009-Ohio-5359, ¶ 10. Therefore, the fact that parties addressed the merits of the *Brady* and *Napue* claims as arguments in their briefs does not change this court's obligation to determine the appeal based upon the assignments of error, which in this case are only premised on the applicability of res judicata.

{¶ 15} Second, the assignments of error do not present questions for appellate review that would have practical effect in this case. The duty of a judicial tribunal is to decide actual controversies by a judgment which can be carried into effect, and not to make declarations which cannot affect the matter at issue in the case before it. *Grove City v. Clark*, 10th Dist. No. 01AP-1369, 2002-Ohio-4549, ¶ 12. When a decision on an issue would not be beneficial to the parties, that issue is moot. *State v. Alexander*, 7th Dist. No. 03 CA 789, 2004-Ohio-5525, ¶ 33; *Clark* at ¶ 11 (citations omitted) ("[A] moot case is one which seeks to get a judgment * * * upon some matter which, when rendered, for any reason cannot have any practical legal effect upon a then-existing controversy."). In this case, res judicata is only one of the two legal bases for the trial court's decision to deny appellant's

petition. Thus, for sake of argument, even if we were to sustain the assignments of error, the outcome of the case would not change since appellant did not assign the trial court's decision on the merits of the *Brady* and *Napue* claims as error and, therefore, that part of the trial court decision would survive and support denial of the petition. Considering all of the above, we find appellant's assignments of error to be moot.

{¶ 16} Accordingly, pursuant to App.R. 12(A)(1)(c), we overrule appellant's first and second assignments of error as moot.

## IV. CONCLUSION

{¶ 17} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., and BEATTY BLUNT, J., concur.

_____